618 So.2d 103 (1993)
Robert GASKIN,
v.
STATE of Mississippi.
No. 91-KP-655.
Supreme Court of Mississippi.
April 22, 1993.
Robert Gaskin, pro se.
*104 Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Ass't. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
BANKS, Justice, for the court:
Robert Gaskin appeals to this Court to have his guilty plea vacated. We find that as to each instance of claimed infirmity there is sufficient assurance in the record that his plea was knowingly, voluntarily and intelligently made. We therefore affirm.
More specifically, Gaskin entered a plea of guilty to charges of murder and armed robbery in the Warren County Circuit Court on January 17, 1990. He was sentenced to life in prison for the murder charge and forty years for the armed robbery charge. Gaskin now challenges the voluntariness of his plea. He contends that the circuit court's investigation into the factual basis for his plea and advice to him at his plea hearing failed to meet the standards set forth in Rule 3.03 of the Mississippi Uniform Rules of Circuit Court Practice and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Gaskin makes five specific contentions of error. He charges that: 1) the circuit court failed to find a factual basis for his plea of guilty; 2) the circuit court never advised him of the nature of the charges that he pleaded guilty to; 3) the circuit court failed to inform him of the critical elements of the crime that he pleaded guilty to; 4) the circuit court never advised him how the charges involved him; and 5) the circuit court did not correctly advise him of the minimum and maximum penalties provided by law for the crimes of which he was charged. Our review reveals that all of these contentions are either belied are either by the record or the supplemental record received from the Warren County Circuit Court or the record is sufficient to demonstrate that any failing was cured by other means.

I
As a result of incidents which are alleged to have occurred on July 29, 1989, Robert Gaskin was indicted by the Warren County Grand Jury on October 29, 1989 on charges of armed robbery and capital murder as an habitual offender. Gaskin pleaded not guilty to both these charges. Subsequently, pursuant to a plea arrangement, Gaskin was recharged in an information with murder and armed robbery. Gaskin then filed a petition to plead guilty to both charges and completed a sworn waiver of indictment for the Warren County Grand Jury. The petition stated that Gaskin was filing the petition in order to show and demonstrate to the Court that he was "knowingly, intelligently, understandingly, freely, and voluntarily entering [his] plea of guilty." The petition contained the following statements in relevant part:

Paragraph 2. I have been served with a copy of the information in the above cause of this court charging me with committing the crimes of armed robbery and murder on July 29, 1989, when it is alleged that I did willfully, unlawfully and feloniously take from the person of Mitchell S. White against his will by violence to his person with a deadly weapon, and that I did willfully, unlawfully, feloniously, and with deliberate design kill Mitchell S. White, a human being, without authority of law. That I have read the information and discussed it fully with my attorneys. That I understand the charges against me, and I understand the maximum sentence for the crime of armed robbery is imprisonment in the state penitentiary for any term not less than three (3) years nor exceeding the life expectancy of the defendant, and I understand that the maximum sentence for the crime of murder is life imprisonment, and that the sentences for both crimes may be set to run consecutively, one after the other, with each other.
* * * * * *

Paragraph 5. I understand that the State will recommend at most a sentence of forty (40) years for the crime of armed robbery and a sentence of life imprisonment *105 for murder, to run consecutively, one after the other.

Paragraph 6. I am pleading guilty to the two crimes charging me with the crime of armed robbery and murder because I am guilty, and for no other reason. I understand that the court is not bound by the recommendation of the State, and that the court will determine what my sentence will be, and that the sentence could be the maximum by law. Therefore, taking everything into account, I hereby enter my plea of guilty to both crimes charging me with the crimes of armed robbery and murder.
A hearing was held to determine whether the court would accept Defendant's plea. During the hearing, the following colloquy, pertinent to the issues raised, took place between the court and the parties at this hearing:
BY THE COURT: Mr. Gaskin, do you understand the charge against you and the recommendation of the State?
BY MR. GASKIN: Yes, sir.
* * * * * *
Q. Do you fully understand the consequences of your act in pleading guilty to the charge; that is, do you understand that you are admitting that you did, in fact, commit this crime of armed robbery and murder?
A. Yes, sir.
* * * * * *
... BY THE COURT [TO COUNSEL FOR DEFENDANT]: Have you talked with [Mr. Gaskin] today?
BY MR. BULLARD: Yes, your Honor.
BY MR. PERRIER: Yes, your Honor.
... BY THE COURT: From your observation of him, do you think he fully understands what he is doing at this time?
BY MR. BULLARD: Yes, your Honor.
BY MR. PERRIER: Yes, your Honor.
BY THE COURT: Have you advised the Defendant of all his constitutional rights?
BY MR. BULLARD: Yes, your Honor. We have advised Mr. Gaskin of all his constitutional rights.
BY THE COURT [To the Defendant]: Mr. Gaskin, are you satisfied with the services of your attorneys?
A. Yes, sir.
Q. Have they threatened you in any manner, or promised you anything in order to get you to plead guilty?
A. No, sir.
Q. Do you believe that your attorneys have properly advised you on your plea?
A. Yes, sir.
Q. Do you believe they have properly represented you in this case?
A. Yes, sir.
Q. Mr. Gaskin, I have attempted to question you thoroughly about your plea of guilty and to be satisfied that you are fully acquainted with your rights. Do you still wish to plead guilty?
A. Yes, sir.
Q. Is there anything further you want to say to the Court at this time?
A. No, sir.
The court then found that Gaskin's plea of guilty was intelligently and understandingly made. Accordingly, it accepted the plea. The court also accepted the sentencing recommendation of the District Attorney for the charges of murder and armed robbery. Gaskin was thereby sentenced to life in prison on the charge of murder forty years on the charge of armed robbery. The sentences were set to run consecutively.
On August 27, 1990, Defendant Robert Gaskin filed a motion in the Warren County Circuit Court to vacate and set aside his conviction and sentence pursuant to the Mississippi Post-Conviction Relief Act. That motion alleged the same contentions of error that are now being asserted by Gaskin. Gaskin prayed that the Court would either grant him an evidentiary hearing or set aside his conviction and sentence. The court denied the motion on February 27, 1991, finding that the motion failed to state a cause of action upon which relief could be granted. Robert Gaskin filed a notice of appeal from that judgment on March 22, 1991.

*106 II
Robert Gaskin contends that various provisions of Rule 3.03 were not complied with. In addition, Gaskin contends that the standards set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), have been violated. In Boykin, the United States Supreme Court held that "it was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279. The petitioner had pleaded guilty to five counts of common-law robbery in Alabama and was convicted on those charges. In so far as the record showed, the trial judge had asked no questions of petitioner concerning his plea, and petitioner did not address the court. Id. 395 U.S. at 239-40, 89 S.Ct. at 1710, at 277.

A. The failure to find or demonstrate a factual basis for the plea.
In Corley v. State, 585 So.2d 765 (Miss. 1991), the Mississippi Supreme Court held that:
What Rule 3.03(2) requires is that, before it may accept the plea, the circuit court have before it, inter alia, substantial evidence that the accused did commit the legally defined offense to which he is offering the plea. What facts must be shown are a function of the definition of the crime and its assorted elements.
585 So.2d at 767. The Court noted that "[a] factual showing does not fail merely because it does not flesh out the details which might be brought forth at trial. Rules of evidence may be relaxed at plea hearings. Fair inference favorable to guilt may facilitate the finding." Id. "In the end," the Court said, "there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged, `that the defendant's conduct was within the ambit of that defined as criminal'." (citing United States v. Broce, 488 U.S. 563, 570, 109 S.Ct. 757, 764, 102 L.Ed.2d 927, 936 (1989)). That factual basis may be formed by any facts presented before the court or otherwise in the record before the court. See Corley, 585 So.2d at 767-68.
In the instant case, the trial judge conducted a lengthy discussion with Mr. Gaskin regarding the voluntariness and consequences of his plea. Only his bare admission of guilt could be said to bear on a factual basis for Gaskin's plea. This does not constitute substantial evidence that Defendant did in fact commit the crimes in question as required by Corley. A guilty plea by its very nature is an admission of guilt. The exchange noted above does not provide any additional information to the court. The whole purpose of this Rule 3.03(2)'s "factual basis" requirement is to push the court to delve beyond the admission of guilt lying on the surface and determine for itself whether there is substantial evidence that the petitioner did in fact commit those crimes he is charged with and is not entering the plea for some other reason that the law finds objectionable.
We are not limited to the guilty plea transcript, however. The record as a whole must be viewed. Id. at 767 (referring to preliminary hearing testimony); Brown v. State, 533 So.2d 1118, 1124 (Miss. 1988) (referring to testimony adduced at a hearing on a demurrer to the indictment.) We find on file before the trial court in the proceedings on the original indictment sworn statements from two individuals declaring that they had witnessed Robert Gaskin beat the victim Mitchell White to death with a nail-studded board and take White's money from his person. These statements provide a reasonable basis for believing that the State could prove Defendant guilty at trial, as required by Corley. We conclude, therefore, that the trial court did have before it enough to find an adequate factual basis for accepting Defendant's guilty plea.

B. Failure to advise regarding the nature of the charges, Gaskin's involvement and the elements of the charges.
Three of the assertions of error advanced by Defendant Gaskin concern alleged deficiencies *107 in the trial judge's advice on the nature of the charges brought against Gaskin. First, Gaskin claims the trial judge failed in a direct sense to advise him of the nature of the charges as explicitly required by Rule 3.03. See Miss.Unif.Crim.R.Cir.Ct. Prac. 3.03(3). In addition, Gaskin contends that the trial judge failed to advise him of how the charges involved him and failed to inform him of the critical elements of the crimes that he pleaded guilty to.
Rule 3.03 does not contain specific requirements worded as such, but the Mississippi Supreme Court did note in Gilliard v. State, 462 So.2d 710, 712 (Miss. 1985), that, in order for a guilty plea to meet constitutional standards,:
It is essential that an accused have knowledge of the critical elements of the charge against him, that he fully understand the charge, how it affects him, the effects of a guilty plea to the charge, and what might happen to him in the sentencing phase as a result of having entered the plea of guilty. (citing Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)).
The record in this case seems to indicate that Mr. Gaskin was aware of the charges that had been brought against him. At the opening Mr. Gaskin's plea hearing, the trial judge stated to Mr. Gaskin:
Mr. Gaskin at an earlier day of this term you entered a plea of not guilty to the charge of Murder and Armed Robbery. As I understand through your attorney that you now wish to change your plea of not guilty to a plea of guilty to the charge of murder and armed robbery. Is that true?
Mr. Gaskin responded that this was correct. Shortly thereafter, the court asked the prosecution for its sentencing recommendation, and the State responded with a recommendation that the Defendant be sentenced to life in prison in the Mississippi Department of Corrections at Parchman for the charge of murder and forty years for the charge of armed robbery. It also recommended that the two sentences be served consecutively. The court then asked Mr. Gaskin, "[D]o you understand the charge against you and the recommendation of the State?" Mr. Gaskin responded, "Yes sir."
The eyewitness statements contained in the supplemental record, which form the factual basis for the court's acceptance of Defendant's plea, point to defendant as the only assailant and the principal actor in the theft. Although Gaskin contends that the court did not discuss with him how the charges related to him, it seems clear that he was implicated under the State's charges as a principal actor and not under another status such as an accessory. Therefore, any failure to discuss how the charges related to Gaskin appears to have been harmless error.
Gaskin's final argument regarding the nature of his charges appears more problematic. Gilliard is clear on the point that the defendant must be apprised of the elements of the offense that he is pleading guilty to. Id. Knowledge of the elements is obviously a prerequisite to an intelligent assessment by the defendant of: 1) whether he has in fact done anything wrong under the law, and 2) the likelihood that he stands to be convicted if he exercises his right to a jury trial. There was no discussion of the elements of the offenses of murder and armed robbery at Mr. Gaskin's hearing. On the otherhand, the information filed in this case is straight forward and fairly explicit concerning the charges lodged and the elements thereof. The petition signed by Gaskin restates the charges lodged in the information and certifies that Gaskin has received a copy of the information.
The failure of the court to advise Gaskin of the elements of the charges to which he pled is harmless error if it can be shown that prior to the court's acceptance of Gaskin's plea, he had already been advised through other sources of the critical elements of the offenses he was charged with. See Vittitoe v. State, 556 So.2d 1062, 1065 (Miss. 1990); Reynolds v. State, 521 So.2d 914, 961-917 (Miss. 1988); Gilliard v. State, 462 So.2d 710, 713 (Miss. 1985). While the same may not be said of charging papers in *108 every instance, here, the information itself informed Gaskin of those critical elements.

C. Failure to advise on the maximum and minimum penalties.
Gaskin's final contention of error is that the trial court did not correctly advise him of the maximum and minimum penalties provided by law for the offenses he pleaded guilty to, as required by Rule 3.03(3)(B). Rule 3.03(3)(B) states in relevant part, "[I]t is the duty of the trial court to address the defendant personally and to inquire and determine ... that the accused understands ... the maximum and minimum penalties provided by law." Miss. Unif.Crim.R.Cir.Ct.Prac. 3.03(3)(B). Mr. Gaskin claims that the trial judge actually misadvised him by telling him that "the maximum sentence for a guilty plea to murder and armed robbery that you can be sentenced to is life in prison." Gaskin points out that, in Stewart v. State, 372 So.2d 257, 258 (Miss. 1979), the Mississippi Supreme Court held that § 97-3-79 places the imposition of the life sentence for the crime of armed robbery solely within the province of the jury. Absent a jury recommendation of a life sentence, the maximum sentence that a judge may prescribe for armed robbery is a definite term reasonably expected to be less than life. 372 So.2d at 258.
The State responds that Gaskin demonstrated his knowledge of the applicable sentencing ranges for armed robbery and murder in paragraph 2 of his plea petition, where he stated in relevant part:
I understand the nature of the charges against me, and I understand the maximum sentence for the crime of armed robbery is imprisonment in the state penitentiary for any term not less than three (3) years nor exceeding the life expectancy of the defendant, and I understand that the maximum sentence for the crime of murder is life imprisonment, and that the sentences for both crimes may be set to run consecutively, one after the other, with each other.
It further notes that the Mississippi Supreme Court indicated in Vittitoe v. State that the presumption of prejudice from failure by the judge to inform a defendant of sentencing requirements may be rebutted by evidence that the defense counsel informed the defendant of such requirements or that defendant had received such information from other sources. 556 So.2d at 1064-1065.
It is true as Defendant contends that the trial judge misinformed him that the maximum penalty for armed robbery is life, when in fact the maximum sentence without a jury recommendation is a definite term of years less than life. Gaskin's plea petition does reflect, though, that he was advised by his counsel of the floors and ceilings for these crimes. Further, Gaskin received the exact sentence that the State told him it would recommend. That sentence included a forty-year sentence for armed robbery, which is a definite term less than life. Any failure to distinguish between the sentence that a jury could mete out and that the court could render is certainly harmless. Therefore, applying Vittitoe, we find no reversible error on this ground.

CONCLUSION
For the reasons set forth above, we affirm.
LOWER COURT'S DENIAL OF POST-CONVICTION RELIEF AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE, ROBERTS and SMITH, JJ., concur.